## WESTERN UNION TELEGRAPH CO. v. HICKMAN.

(Circuit Court of Appeals, Fourth Circuit.   January 3, 1918.)

### No. 1547.

1. MASTER AND SERVANT ⟨⟩362—MASTER'S LIABILITY FOR INJURY TO SERVANT —WORKMEN'S COMPENSATION ACT—CONSTRUCTION—"CASUAL EMPLOYMENT."

Under the Workmen's Compensation Act of West Virginia (Acts 1915, c. 9, as amended by Acts 1915 [Ex. Sess.] c. 1), which exempts from its operation persons in "casual employment," the exemption depends, not on the nature of the work performed, but on the nature of the contract of employment, and one hired for a limited and temporary purpose, though within the scope of the master's business, is within the exception.

2. MASTER AND SERVANT ⟨⟩289(21)—MASTER'S LIABILITY FOR INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Where plaintiff, temporarily employed by defendant telegraph company to assist in repairing a portion of its line, was injured by the falling of a pole upon which he had climbed in the course of duty, which was caused by the breaking of the pole where it had become decayed below the surface of the ground, the defect not being apparent by inspection above the ground, plaintiff was not chargeable as matter of law with contributory negligence or assumption of the risk.

In Error to the District Court of the United States for the Northern District of West Virginia, at Parkersburg; Alston G. Dayton, Judge.

Action at law by Charles H. Hickman against the Western Union Telegraph Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Herbert Fitzpatrick, of Huntington, W. Va. (Enslow, Fitzpatrick & Baker, of Huntington, W. Va., on the brief), for plaintiff in error. V. B. Archer, of Parkersburg, W. Va., for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

KNAPP, Circuit Judge. [1] In this action of negligence plaintiff in error, defendant below, set up in defense and claimed protection under the Workmen's Compensation Act of West Virginia (Acts 1915, c. 9, as amended by Acts 1915 [Ex. Sess.] c. 1) in force when the accident happened. This act, which otherwise would bar the suit, excepts from its provisions "casual employment," and plaintiff can therefore maintain his action if he was engaged in "casual employment" at the time he got hurt. The facts in that regard appear to be these:

Plaintiff was about 27 years old when he received the injuries for which he sues. His previous employment had been mainly with telephone companies, and he was an experienced, if not expert, telephone lineman. For a while before the accident he was out of work and looking for something to do. His father, James W. Hickman, an inspector for the defendant company, had been directed to repair its clock circuit in the city of Parkersburg, a job of brief duration and costing only a small sum. Under authority to get a lineman to help him, he hired his son, the plaintiff, for "not over five days," and they began the work. On the morning of the fourth day, a telegraph pole, which plaintiff had climbed to string a wire, broke down under his weight and he was thrown to the ground and severely injured. Was his employment "casual"?

The English Compensation Act, which some of our states have closely followed, excepts "a person whose employment is of a casual nature and who is employed otherwise than for the purpose of the employer's trade or business." Construing this act, the English courts have held that the kind of work done by the employé, rather than duration of service, is the determining factor. If the work pertain to the business of the employer and be within the scope of its purpose, the employment is not "of a casual nature," although the hiring be only for a short period of time. The Connecticut statute (Pub. Acts 1913, c. 138) is practically the same as the English, and accordingly the Supreme Court of that state has held (Thompson v. Twiss, 90 Conn. 444, 97 Atl. 328, L. R. A. 1916E, 506) that the nature of the employment was measured, not by tenure of service, but "by the character of the work." The New Jersey statute likewise exempts those "whose employment is of a casual nature."

But the West Virginia act, in defining exceptions, uses the terms "casual employment" and "persons casually employed." The equivalent exemption of persons "whose employment is but casual" appears in the Compensation Laws of Massachusetts (prior to the amendment of 1914 [St. 1911, c. 751, as amended by St. 1912, c. 571]), Illinois (Laws 1911, p. 315, as amended by Laws 1913, p. 335), Michigan (Pub. Acts [Ex. Sess.] 1912, No. 10), and Minnesota (Gen. St. 1913, §§ 8195–8230). This noticeable departure from the language of the English statute indicates a legislative intent to broaden the exception and place it on a different basis. Its apparent effect is to make exemption depend, not on the nature of the work performed, but on the nature of the contract of employment. If the hiring be incidental or occasional, for a limited and temporary purpose, though within the scope of the master's business, the employment is "casual," and covered by the exception. And so it has been held by the courts of states whose Compensation Acts have substituted "casual employment," or words of the same import, for the "employment of a casual nature," found in the English statute. In re Gaynor, 217 Mass. 86, 104 N. E. 339, L. R. A. 1916A, 363; In re Cheevers, 219 Mass. 244, 106 N. E. 861; Aurora Brewing Co. v. Industrial Board, 277 Ill. 142, 115 N. E. 207; Maryland Casualty Co. v. Pillsbury, 172 Cal. 748, 158 Pac. 1031. Thus, in the Gaynor Case, supra, in which the subject is discussed at

length, the court says that "casual" is the antonym of "regular," "systematic," "periodic," and "certain." These decisions, and the convincing reasons on which they rest, warrant the conclusion that plaintiff was engaged in "casual employment" when the accident occurred.

This conclusion finds further support in the so-called insurance feature of the West Virginia statute, under which a compensation fund is created. The premiums which make up this fund are paid by the employers on the basis of their monthly·pay rolls, which are certified to the treasurer of the state, and they are authorized to deduct each month from the pay of their employés, excepting persons casually employed, 10 per cent. of the premium paid for that month. But it does not appear, and we do not understand it to be claimed, that Hickman was on defendant's pay roll for the month in which he was injured, or that any deduction from his pay for a few days' service was made or contemplated. In short, taking all the circumstances into account, it seems but reasonable to hold that plaintiff's employment was "casual" within the meaning of the West Virginia act. Certainly, as we think, the defendant was entitled to no more than the submission of the question to the jury, as was done, and their finding on that issue must be accepted as conclusive.

[2] The defenses of contributory negligence and assumption of risk may be disposed of without extended comment. There was testimony from which the jury might find that the pole which broke appeared to be in sound condition; that plaintiff looked at it before ascending, and observed nothing to suggest that it could not be climbed with safety; that it broke below the surface of the ground, where it was rotten and decayed; that discovery of this subsurface condition required the use of certain tools with which plaintiff had not been provided; that proper inspection would have disclosed the defect; that defendant employed inspectors and had some system of inspection of its clock circuit, but had not inspected the pole in question for at least a number of years; that it was necessary for plaintiff to climb this pole in doing the work for which he was hired; and that he was acting with reasonable care and prudence when the accident happened. This was sufficient, in our judgment, to take the case to the jury, and the refusal of the court to direct a verdict for defendant, on the grounds here referred to, is sustained by numerous authorities. Western Union Tel. Co. v. Tracy, 114 Fed. 282, 52 C. C. A. 168; Britton v. Telephone Co., 131 Fed. 844, 65 C. C. A. 598; Munroe v. Ley & Co., 156 Fed. 468, 84 C. C. A. 278; Jackson Fibre Co. v. Meadows, 159 Fed. 110, 86 C. C. A. 300; Bush v. Cin. Trac. Co., 192 Fed. 241, 112 C. C. A. 499; Heckert v. Central D. & P. T. Co., 218 Fed. 29, 134 C. C. A. 43; Perry v. Electric Ry. Co., 72 W. Va. 282, 78 S. E. 692, L. R. A. 1916D, 962; Corby v. Telephone Co., 231 Mo. 417, 132 S. W. 712; Hulse v. Home Telephone Co., 164 Mo. App. 126, 147 S. W. 1124; McGuire v. Bell Telephone Co., 167 N. Y. 208, 60 N. E. 433, 52 L. R. A. 437; Southern Bell Tel. Co. v. Clements, 98 Va. 1, 34 S. E. 951.

We have carefully examined the various assignments of error which are based upon instructions to the jury, both those given and those refused, but find none of them of sufficient merit to require discussion.

Taking the charge as a whole, the case was fairly and correctly submitted, and no sufficient reason appears for disturbing the judgment.
Affirmed.