## JUPOLLO PUBLIC SERVICE CO. et al. v. GRANT.
### No. 2948.

Circuit Court of Appeals, Fourth Circuit.
June 18, 1930.

Murray Allen, of Raleigh, N. C. (Harkins & Van Winkle, of Asheville, N. C., on the brief), for appellants.

Thomas S. Rollins and Carl W. Greene, both of Asheville, N. C. (Rollins & Smathers, of Asheville, N. C., on the brief), for appellee.

Before NORTHCOTT, Circuit Judge, and McCLINTIC and HAYES, District Judges.

NORTHCOTT, Circuit Judge.

This is a civil action for the recovery of damages for the death of plaintiff's intestate, Fred Grant, alleged to have been caused by the negligence of the defendants, Jupollo Public Service Company and Utilities Engineering & Construction Company. The action was begun in the superior court of McDowell county, N. C., and on petition of appellants was removed to the District Court of the United States, at Asheville, where it was tried before a jury. The trial was in August, 1929, and the jury returned a verdict for the plaintiff in the sum of $15,204.13, upon which verdict judgment was entered by the court below, from which action this appeal was taken.

No evidence was offered on behalf of the defendants, and there is little or no dispute as to the facts. One of the defendants, Jupollo Public Service Company, owned an electric plant and lines which were being repaired and reconstructed by the Utilities Engineering & Construction Company, the other defendant, with whom it had a contract to carry on this construction work. The deceased entered the employment of the Utilities Company, and for several months had been engaged in the work of taking out old poles and replacing them with new ones, and transferring the power wires and lines from the old poles to the new. Where the old poles were in good condition they were used in the new line.

On December 3, 1928, when the deceased, together with his brother and several other workmen, came to work, they found the foreman absent on account of sickness. The deceased went to the foreman's house to get the key to the toolhouse, and while there the foreman instructed him to go ahead with the work of removing old poles and replacing them with new ones. The foreman knew where the work had to be done that day, and instructed the deceased to use a certain pole, which seemed to be sound, in the new line. The foreman, who was service manager of the Jupollo Public Service Company, together with the man who, as superintendent, had charge of the construction work for the engineering company, had a few days prior inspected the pole in question, and decided it was sound and could be used. The deceased was present at the inspection, which was not made below the surface of the ground.

It afterward developed that the pole was rotted badly underneath the ground, and that its condition could not have been ascertained without digging below the surface. Deceased climbed the pole in question without piking it or in any way bracing it, and when he cut the wires loose from the top of the pole the pole fell. The deceased received injuries which caused his death.

The first question raised is concerning an incident that happened at the trial when one of the witnesses of the plaintiff was asked by the plaintiff's attorney the question, "Did any officer or agent of the defendant company talk to you about this case? Any of them go to see you about coming to this court to testify?" Answer by the witness, "The Insurance Company—" Attorneys for the defendant at once objected, and the witness continued, "Officers or agents of the Insurance Company," when he was again interrupted, and the court at once charged the members of the jury that they should pay no attention to the answer of the witness. Attorneys for appellants contend that this statement by the witness required that the court, on their motion, withdraw a juror and direct a mistrial.

It is not necessary to quote authorities to the effect that the introduction in a case of evidence to the effect that the defendants are carrying insurance that would indemnify them for loss in event of a verdict against them is wrong, and that the admission of such evidence, if permitted by the court, is error, but here the answer of witness, unfinished as it was, was not at all responsive to the question asked. There was no attempt on the part of attorneys for the plaintiff to introduce the evidence, and the court at once did everything in its power to impress the jury with the fact that the incompleted answer should be in no way considered. In view of these circumstances and in view of the admitted facts, we are of the opinion that there was no reversible error.

"Obviously, information volunteered by a witness to the effect that the defendant carries liability insurance is as harmful and prejudicial as responsive testimony to that

effect, and should be promptly stricken out, yet, as a general rule, the admission of voluntary, unresponsive statements of this kind are not regarded as reversible error, even when made by the plaintiff or his witnesses, if the court takes prompt action to eradicate such statements. * * *" 56 A. L. R. page 1451. See, also, Gortz v. Ravenel, 127 S. C. 505, 121 S. E. 369; Holt v. Mfg. Co., 177 N. C. 170, 98 S. E. 369; Hyatt v. McCoy, 194 N. C. 760, 140 S. E. 807.

"Incompetent answers of a witness to proper questions, when excluded from the consideration of the jury, will not ordinarily constitute error. * * *

"The jury was instructed to disregard it [the evidence] and it does not appear that counsel for the plaintiff could have anticipated the objectionable answers of the witness. In view of these facts, a reversal of the judgment on the ground here advanced would be unfair to the plaintiff." Covington v. Navarre, 99 W. Va. 431, 129 S. E. 313.

"There is no hard and fast rule that requires a court to penalize the plaintiff by directing a mistrial because evidence that the defendant is protected by indemnity insurance. * * * As a general rule, however, unexpected and unresponsive answers are not deemed to be so prejudicial as to require a reversal if the trial court takes prompt action to eliminate the prejudicial matter. * * * The Federal courts have generally held, as have the state courts, that where prejudicial evidence comes out in the trial of the case, a simple admonition by the Court that such evidence is not competent and that the jury should disregard such statements, is all that can be required or expected." 56 A. L. R. (Ann.), p. 1486.

The deceased had the right to rely on the inspection made of the pole in question by his two superiors, and in climbing the pole was carrying out the instruction of his foreman. The facts in this case are practically on all fours with the facts in the case of Western Union Telegraph Co. v. Hickman, 248 F. 899, 901, which case is controlling here and in which case this court said:

"The defenses of contributory negligence and assumption of risk may be disposed of without extended comment. There was testimony from which the jury might find that the pole which broke appeared to be in sound condition; that plaintiff looked at it before ascending, and observed nothing to suggest that it could not be climbed with safety; that it broke below the surface of the ground, where it was rotten and decayed; that discovery of this subsurface condition required the use of certain tools with which plaintiff had not been provided; that proper inspection would have disclosed the defect; that defendant employed inspectors and had some system of inspection of its clock circuit, but had not inspected the pole in question for at least a number of years; that it was necessary for plaintiff to climb this pole in doing the work for which he was hired; and that he was acting with reasonable care and prudence when the accident happened. This was sufficient, in our judgment, to take the case to the jury, and the refusal of the court to direct a verdict for defendant, on the grounds here referred to, is sustained by numerous authorities. Western Union Tel. Co. v. Tracy, 114 F. 282, 52 C. C. A. 168; Britton v. Telephone Co., 131 F. 844, 65 C. C. A. 598; Munroe v. Ley & Co., 156 F. 468, 84 C. C. A. 278; Jackson Fibre Co. v. Meadows, 159 F. 110, 86 C. C. A. 300; Bush v. Cin. Trac. Co., 192 F. 241, 112 C. C. A. 499; Heckert v. Central D. & P. T. Co., 218 F. 29, 134 C. C. A. 43; Perry v. Electric Ry. Co., 72 W. Va. 282, 78 S. E. 692, L. R. A. 1916D, 962; Corby v. Telephone Co., 231 Mo. 417, 132 S. W. 712; Hulse v. Home Telephone Co., 164 Mo. App. 126, 147 S. W. 1124; McGuire v. Bell Telephone Co., 167 N. Y. 208, 60 N. E. 433, 52 L. R. A. 437; Southern Bell Tel. Co. v. Clements, 98 Va. 1, 34 S. E. 951."

The defense of the assumption of risk was not specifically pleaded by the defendants; there was sufficient evidence to take the case to the jury; the jury found against the defendants on the issue of contributory negligence; there was no error in the trial, and the judgment of the court below is accordingly affirmed.